UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA C. AHRENS,

       Plaintiff,                       CIVIL ACTION NO. 06-10395

    v.                                    DISTRICT JUDGE JOHN CORBETT O'MEARA

JO ANNE B. BARNHART,             MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion be granted and that plaintiff's motion be denied.

**II. Background**

      On December 21, 1999, and October 11, 2000, plaintiff filed applications for Social Security Disability Insurance Benefits, claiming that she experienced disabling neck, back, and leg pain as a result of an auto accident, as well as pressure in her head, with a disability onset date of February 15, 1999. (Tr. 28, 36, 59, 178-79) Plaintiff was 44 years of age when she filed the initial application. She has a high school education, with a work history including employment as a bartender and a welder. (Tr. 37, 45-47, 185, 202)

-1-

The Social Security Administration (SSA) denied plaintiff's claims on initial review. (Tr. 23-27, 145-49)  Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 21-22, 150)  The hearing was held on July 21, 2003, before ALJ Kathleen Donahue.  (Tr. 396-436)  Plaintiff, represented by counsel, appeared and testified at the hearing.  The ALJ also took testimony from a vocational expert (VE).

On December 26, 2003, the ALJ issued a decision denying plaintiff's claim.  (Tr. 11-20) The ALJ determined that plaintiff had degenerative disc disease of the back, reduced sensation in her right arm, right leg, and left leg, asthma, and that she was status post cervical fusion.  The ALJ further determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that she did not have an impairment or combination of impairments that met or equaled any impairment listed in Subpart P, Appendix 1 of the Social Security Regulations.  In addition, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform a range of sedentary work and that there were a significant number of jobs in the local economy that she could perform within that RFC.[1]  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.

---

[1]"Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Following the ALJ's denial of her claim, plaintiff filed a request for review of the decision with the SSA's Appeals Council. (Tr. 9) The Appeals Council denied the request on November 25, 2005. (Tr. 5-7) The ALJ's decision thus became the final decision of the Commissioner.

On January 30, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the parties have filed cross-motions for summary judgment. Plaintiff claims that the ALJ failed to accord appropriate weight to the opinions of two treating physicians, that the ALJ erred in concluding that plaintiff's allegations of disabling pain and limitations were not totally credible, and that the ALJ failed to consider the combined effect of plaintiff's impairments. The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

## III. Legal Standards

### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists

> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that she is disabled.

Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate Social Security Disability claims.  See 20 C.F.R. § 404.1520.  As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment.  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after

>  the mailing to him of notice of such decision or within such further
>  time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV.  Analysis

### A.  Treating Physician Opinions

Plaintiff's first claim is that the ALJ erred in failing to accord controlling weight to the opinions of her "long time" treating physicians, Dr. Gregory P. Graziano and Dr. Jeffrey A. Rosenthal. According to plaintiff:

> Drs. Graziano and Rosenthal...stated that she was completely
> disabled as result of severe neck and back pain. The treating
> doctors explained that Ms. Ahrens was totally disabled as a result
> of severe degenerative disc disease, and ruptured lumbar disc, and
> failed cervical diskectomy and fusion (Exhibits 12F & 17F). To
> support their disability opinion, both treating doctors submitted
> numerous objective clinical tests and physical examination
> findings (Exhibits2F & 9F & 17F). The treating doctors did not
> believe that the severe impairments would ever improve. Drs.
> Graziano and Rosenthal's assessment was shared by other

>    examining physicians, who made similar objective findings
>    (Exhibits 6F, 8F, 17F).

Plaintiff's Brief, p. 7. Plaintiff thus invokes the "treating physician" rule.

As the Sixth Circuit stated in <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a "treating source's" opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record. <u>See</u> also <u>Warner v. Commissioner of Social Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

Plaintiff appears to have taken some license with the record in pressing this argument. First, plaintiff overstates the case in referring to Drs. Graziano and Rosenthal as "long-time" treating physicians. Turning first to Dr. Graziano, the record reflects that he saw plaintiff on only three occasions – May 26, 2000, August 25, 2000, and December 8, 2000. (Tr. 209-11, 266) During the May 26, 2000 appointment, Dr. Graziano took a medical history, examined plaintiff, reviewed radiograph and MRI tests of plaintiff's back, and discussed with her the risks

and possible benefits of undergoing surgery to relieve her back and leg pain.[2]  (Tr. 209-10)  At the August 25, 2000 appointment, Dr. Graziano, among other things, examined plaintiff, prescribed pain medication, and referred her for an MRI and physical therapy.  (Tr. 211)  At the December 8, 2000 appointment, Dr. Graziano reviewed the results of the MRI, conducted a physical examination, and referred her to a pain clinic.  There is no indication in the record that Dr. Graziano saw plaintiff again after December 8, 2000.

The Social Security Regulations state that term "*[t]reating source* means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 404.1502.  It is questionable whether three visits over a seven month period constitute an "ongoing treatment relationship" such that Dr. Graziano may be considered a "treating source" within the meaning of the regulations.  See, e.g., Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983)(doctor who examined claimant only once or twice not a treating source); Deacon v. Barnhart, 2003 WL 22494911 (N.D.Ill.)(physician who saw claimant twice, once for an examination and once to fill out RFC assessment, not a treating source); Doyal v. Barnhart, 331 F.3d 758 (10th Cir. 2003)(physician who saw claimant on two occasions in seven years not a treating source).

However, even if Dr. Graziano is deemed a "treating source" within the meaning of the Regulations, the ALJ was not required to accord his "opinion" any special deference for several

---

[2]Plaintiff underwent an anterior cervical discectomy and fusion procedure at the C5-6 level on May 4, 1999. At the May 26, 2000 appointment, Dr. Graziano discussed with plaintiff the prospect of undergoing further surgery.

reasons. Most importantly, plaintiff's argument is based upon an entirely flawed premise as it relates to Dr. Graziano. Contrary to the assertions made by plaintiff in her brief, Dr. Graziano never opined that plaintiff "was totally disabled as a result of severe degenerative disc disease, ... ruptured lumbar disc, and failed cervical diskectomy and fusion[,]" or that her impairments would never improve. At the initial May, 2000 appointment, Dr. Graziano gave plaintiff "an off-work slip." (Tr. 210) In his report regarding the August, 2000 appointment, Dr. Graziano stated the following: "The patient stated that because of her pain, she has not been able to find work; therefore, she was given a slip indicating her disability." (Tr. 211) Other documentation in the record indicates that the period of disability was limited to the period of May 26, 2000, the date of the initial appointment, through August 26, 2000. (Tr. 219, 223) There is no evidence in the record that Dr. Graziano subsequently extended the disability period or filled out a new "off-work slip." Thus, the purported "opinion" of Dr. Graziano that plaintiff was totally and permanently disabled does not exist. Moreover, there is nothing in the record indicating that Dr. Graziano was of the belief that plaintiff's impairments would never improve. To the contrary, Dr. Graziano referred plaintiff to physical therapy, encouraged her to lose weight to lessen her symptoms, and advised her that surgery might provide her with significant pain relief. These actions suggest that Dr. Graziano was of the belief that with appropriate intervention, plaintiff's condition might improve. Further, to the extent that the "off-work" slip constitutes an opinion that plaintiff is disabled, the opinion is not well-supported. Dr. Graziano rendered that "opinion" at the very first appointment he had with plaintiff. Thus, the opinion was not based upon a "longitudinal picture of [plaintiff's] impairment." 20 C.F.R. § 404.1527(d)(2)(I). In addition, as

noted above, Dr. Graziano indicated in the August 26, 2000 report that "[t]he patient stated that because of her pain, she has not been able to find work; therefore, she was given a slip indicating her disability." (Tr. 211)  This statement suggests that Dr. Graziano's issuance of the off-work slip was based entirely upon plaintiff's subjective assessment of her condition and not upon his own independent assessment thereof.  Dr. Graziano did not refer to any diagnostic tests or other medical records in issuing the off-work slip.  For the reasons discussed above, the court finds that the ALJ made no errors in her assessment of Dr. Graziano's opinion.

As with Dr. Graziano, plaintiff has substantially overstated the case in asserting that Dr. Rosenthal concluded that she was totally and permanently disabled.  Dr. Rosenthal, who is employed at the University of Michigan Health System Multidisciplinary Pain Center, first saw plaintiff on March 14, 2001 on referral from Dr. Graziano.  Dr. Rosenthal took a medical history, examined plaintiff, prescribed pain, depression, and sleep medication, and discussed certain pain relief measures with plaintiff.  (Tr. 248-49)  He saw plaintiff again on April 18, 2001.  (Tr. 255-57)  On that date, Dr. Rosenthal wrote a letter in which he stated the following:

> The purpose of this letter is to provide some information to you about Ms. Ahrens and her medical situation.  As you may be aware, she has been undergoing treatment since her accident in September of 1998.  She has had some surgical intervention and is being considered for further surgical intervention.  She is currently involved in treatment in my clinic for management of pain.  We have not yet completed our treatment and have not yet made significant improvement in her pain.
>
> At this time, I feel that her pain prevents her from being able to work.  She is unable to perform her usual household activities without exacerbating her pain.  I would defer any long-term predictions about the length of her disability to her primary care

>physician.  I hope this information helps you in your service to Ms.
>Ahrens.

(Tr. 258)  Dr. Rosenthal saw plaintiff again on July 17, 2001.  In a letter to Dr. Graziano bearing that date, Dr. Rosenthal indicated that there was nothing more the pain clinic could do for her due to the fact that she had declined "any interventional procedures[.]"  (Tr. 264)  Dr. Rosenthal discharged plaintiff back to Dr. Graziano's care.

Like Dr. Graziano, Dr. Rosenthal saw plaintiff on only three occasions.  It is thus questionable whether Dr. Rosenthal is a treating source for purposes of applying the treating physician rule.  20 C.F.R. § 404.1502.  Nonetheless, assuming that he is a treating source, the ALJ did not err in declining to give his opinion controlling weight.  Plaintiff's argument for application of the treating physician rule is based upon the premise that Dr. Rosenthal found plaintiff to be totally and permanently disabled.  That premise is untenable.  As was the case with Dr. Graziano, Dr. Rosenthal never opined that plaintiff was totally and permanently disabled.  He merely opined that she was temporarily disabled.  He noted that the clinic had "not yet completed our treatment" and expressly *declined* to render an opinion as to plaintiff's long-term prospects for returning to work.  (Tr. 258)  Dr. Rosenthal also indicated in a report dated April 18, 2001 that "[a]t this time we do not feel that she is able to return to work.  We are hopeful that changes in her medications as well as potential injection therapy will help return her to near normal function, however, we are uncertain of the adequacy of her response."  (Tr. 256)  Thus, rather than finding her to be permanently and totally disabled, Dr. Rosenthal was guardedly optimistic that plaintiff's condition would improve with therapy.  In addition, Dr.

-10-

Rosenthal did not cite the results of any physical examinations or diagnostic tests in opining that plaintiff was temporarily disabled.  The only thing he referenced in the letter was the fact that plaintiff was having difficulty with her activities of daily living.  Thus, like Dr. Graziano, Dr. Rosenthal appears to have based his assessment of plaintiff's ability to work upon her own subjective assessment of her condition.

In sum, the court concludes that the ALJ did not err in his declining to accord special deference to the findings and opinions of Drs. Graziano and Rosenthal under the treating physician rule.

### B.  Plaintiff's Credibility

The ALJ determined that plaintiff's allegations regarding her limitations were "not totally credible."  (Tr. 19)  Plaintiff contends that the ALJ erred in failing to find that her complaints of disabling pain and limitations were fully credible.

An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997).  However, credibility assessments are not insulated from judicial review.  Despite the deference due, such a determination must nevertheless be supported by substantial evidence.  Id.

With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]"  20 C.F.R. § 404.1529(a); see also Walters, supra, 127 F.3d at 531.  Rather, "there must be medical signs and laboratory findings which show that you have a medical

-11-

impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a). The Sixth Circuit has developed a two-prong test for evaluating a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Walters, 127 F.3d at 531 (citations omitted).

The ALJ concluded that the record contained objective medical evidence of underlying medical conditions, but that the record did not otherwise confirm plaintiff's complaints of disabling pain. In so concluding, the ALJ noted that the evidence in the record regarding plaintiff's activities of daily living (ADLs) was consistent with the ability to perform sedentary work:

> Despite her impairments, the claimant has been able to perform many daily living activities. She testified that she can bathe, dress, and feed herself and she cleans dishes, cleans of the counters at home, folds clothes, and does a little cooking. She shops once a week for 45 minutes and drives once a week for two and a half miles. The records show that she was driving much more in the past and further distances. She was traveling several hundred miles a week in November of 2001 (Exhibit 19F). She visits with friends two to three times a week for two to three hours and she watches television two to four hours a day.

(Tr. 18)  The ALJ also noted that plaintiff testified at the July 21, 2003 hearing that "she started using a cane three years ago intermittently throughout the day[,]" but that Dr. Anjanette M. Stolz, M.D., a DDS consulting physician, stated in a March 10, 2001 examination report that plaintiff did not use or require an assistive device for ambulation, and that "there is nothing in the medical record that suggests that since the report of Dr. Stolz, the claimant needs an assistive device."  (Tr. 18)  Further, the ALJ stated that "[t]he claimant complained of having headache pain so severe at the ninth to tenth levels, but there is no medical evidence of such headaches and she is using only over-the counter medication to relieve such headaches."  (Tr. 18)  The ALJ also cited the fact that while plaintiff complained of suffering from asthma, "[t]here is almost no medical evidence of asthma other than her listing of asthma medications in her medications report in Exhibit 16E."  (Tr. 18)

Plaintiff does not claim that the ALJ relied upon any improper factors in assessing her credibility or that the ALJ mischaracterized the portions of the record upon which she relied in concluding that plaintiff was not entirely credible.  Plaintiff contends, in essence, that the weight of the evidence in the record justifies a conclusion that her complaints are entirely credible.  It is not the role of the court to conduct a *de novo* review of the evidence, resolve conflicts in the evidence, or decide questions of credibility in the first instance.  See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)(reviewing court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility").  Rather, the court's role is limited to a determination of whether the ALJ's decision is supported by substantial evidence.  While a reasonable finder of fact might conclude from the evidence in the record that plaintiff

experiences disabling pain, the court concludes, bearing in mind the limited scope of review and the deference due an ALJ's credibility determination, that there is sufficient evidence in the record to sustain the ALJ's credibility determination in this matter.

The ALJ cited a number of substantial reasons for discounting plaintiff's allegations. Again, plaintiff does not contend that the ALJ considered any improper factors in assessing her credibility. To the reasons cited by the ALJ, the court would add that plaintiff points to no evidence in the record of muscle atrophy or muscle spasm, which are typical indicators of severe pain, and no evidence of any nerve root impingement. See, e.g., Jones v. Secretary of HHS, 945 F.2d 1365, 1369-70 (6th Cir. 1991)(noting that muscle atrophy and muscle spasms reliable indicators of pain). Further, the record indicates that plaintiff declined to undergo recommended treatment procedures that might have alleviated her pain. Dr. Rosenthal recommended that plaintiff undergo a "medial branch block of the cervical region" and a "cervical epidural steroid injection." (Tr. 264) Plaintiff declined both procedures. In addition, Dr. Graziano suggested that plaintiff undergo a right L4-5 discectomy, informing her that there was a 90 percent chance the surgery would improve her sciatic leg pain, an 80 percent chance it would improve "some of her back pain," and a 20 percent chance that it would increase her lower back pain. (Tr. 261) There is no indication in the record that plaintiff underwent this procedure. The fact that plaintiff declined these procedures, while perhaps not dispositive of her disability claim under 20 C.F.R. § 404.1530, is nonetheless relevant to her credibility and tends to undercut her complaints of disabling pain. The court also notes that a DDS consultant, whose name is illegible, reviewed the record and indicated that plaintiff's statements regarding her conditions appeared to be only

partially credible. (Tr. 232) Additionally, plaintiff testified that she used a walker from time to time. (Tr. 418) However, there is no mention in the medical record of her use of a walker and no medically indicated need for such a device. Further, adding to the ADL evidence cited by the ALJ, here is evidence in the record that at a time past her alleged onset date, plaintiff was attending oval track races on a weekly basis and that she would spend up to eights hours at the race track on each occasion. (Tr. 415) In addition, plaintiff testified that her husband worked out-of-town construction jobs during the summers and that he only returned home on the weekends, if at all, while he was engaged in such work. (Tr. 402-03) Plaintiff also lived with her two sons, who were 23 and 13 years of age at the time of the hearing, but the fact that her husband could remain away for such extended periods of time suggests that plaintiff was capable of maintaining a household and performing at least some domestic tasks such as cleaning, cooking, shopping, and doing laundry. (Tr. 402) In sum, the court concludes that there is substantial evidence in the record to support the ALJ's credibility determination.

### C.  Combined Impairments

Plaintiff also contends that the ALJ failed to properly consider the combined effects of her impairments. Plaintiff has not provided the court with any explanation as to exactly how the ALJ erred in this regard. Rather, the argument appears to be simply a restatement of her general contention that the evidence in the record establishes that she is disabled. It is evident from the ALJ's opinion that she fully considered all of plaintiff's impairments in determining that plaintiff retained the capacity to perform a limited range of sedentary work. The court finds no merit in plaintiff's final argument.

**D.  Substantial Evidence**

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity.[3]  In response to the question, the VE testified that such a person could work in the areas of production inspection, assembly, packaging, and machine operation, and that approximately 4,500 such jobs existed in the local economy.  (Tr. 20, 432-34)  Based on that testimony, the ALJ concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

Here, plaintiff has failed to persuade the court that the hypothetical the ALJ posed to the VE did not paint an accurate picture of the extent of her physical limitations.  The ALJ limited plaintiff to sedentary work and included in the hypothetical further restrictions designed to accommodate plaintiff's back and neck impairments.  These restrictions are consistent with the

---

[3]The ALJ's RFC determination is as follows:
The claimant has the following residual functional capacity: needs a relatively clean air environment, being restricted to a simple, repetitive task due to pain, being restricted to standing/walking two hours and sitting six hours in a eight hour workday, no frequent lifting over eight pounds, and no repetitive pushing or pulling with her arms or legs.

(Tr. 20)

findings of DDS consultants Dr. Ken Taylor and Dr. William Thomas, both of whom indicated that plaintiff was capable of performing even more strenuous light work.  (Tr. 136-43, 233-40)  Further, the restrictions are consistent with the relatively mild findings contained in the report prepared by Dr. Stolz, who, following a consultative exam, noted that plaintiff walked normally without the use of an assistive device, that she had no difficulty getting on and off the examination table, that straight leg raising was negative, that plaintiff had no paravertebral muscle spasm or muscle atrophy, and that she had normal motor function.  Further, the ALJ gave partial credit to plaintiff's allegations regarding the extent of her limitations and, to the extent the ALJ discounted those allegations, she acted properly in so doing.  In sum, the court finds, based upon a review of the record as a whole, that the hypothetical question the ALJ posed to the VE was reasonably accurate.  Accordingly, the VE's testimony is sufficient to support the ALJ's determination that plaintiff is not disabled.

## V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

     Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


                                S/VIRGINIA M. MORGAN
                                VIRGINIA M. MORGAN
Dated:  August 1, 2006          UNITED STATES MAGISTRATE JUDGE

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 1, 2006.

                                s/Kendra Byrd
                                Case Manager to
                                Magistrate Judge Virginia M. Morgan